UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

SENTRY MEDICAL PRODUCTS,

    Plaintiff,

 v.              Case No. 02-C-426

AMERICAN DENTAL SUPPLY, LLC, et al.,

    Defendants.

**DECISION AND ORDER**

On March 26, 2004, the Court entered judgment in favor of the Plaintiff Sentry Medical Products ("Sentry") and against Defendant American Dental Supply, LLC ("ADS"), on Sentry's claim for breach of contract. Almost four years later, on January 18, 2008, Sentry has filed a motion entitled "Motion To Amend Judgment To Add Non-Party Alter Egos As Judgment Debtors." (Dkt. # 143.) Sentry seeks by its motion to add Jeanne and Richard Broadway, Laura and William Fisher, and Gary Scott as defendants, along with ADS, on the judgment entered in Sentry's favor almost four years ago. According to Sentry, these individuals and various individuals have served as the alter ego of defendant ADS, the limited liability company against which it obtained its judgment. Sentry's motion asserts that the assets of ADS have routinely been transferred from ADS to these individuals (hereinafter "the alter ego defendants), all members of the same family, or other shell companies in their control. Thus, despite having a large stream of revenues, ADS has never paid even one cent of the nearly $2 million judgment the plaintiff was awarded in 2004. Because these

family members were essentially the alter ego of ADS, Sentry claims it is entitled to enforce its previously entered judgment against them by piercing the corporate veil. Sentry contends it is entitled to such relief under Rule 69(a) of the Federal Rules of Civil Procedure.

Sentry's motion will be denied for two reasons. The motion will be denied first because it asserts different claims against different defendants than the claim on which this Court entered judgment more than four years ago. It therefore constitutes a separate action and must be separately commenced in order to bring the defendants within the Court's jurisdiction. The previous judgment entered by this Court was against ADS for breach of contract. Sentry now seeks to invoke the Court's equitable power to pierce the corporate veil and enforce that judgment against the so-called alter ego defendants. Thus, Sentry has asserted a new and separate claim against an entirely new set of defendants. This requires the filing of a new complaint and service of a summons on each defendant, *see* Fed. R. Civ. P. 3, 4, not a mere motion to amend the judgment previously entered in a closed case. *See, e.g., Peacock v. Thomas*, 515 U.S. 349, 358-59 (1996) ("The alleged wrongdoing in this case occurred after the ERISA judgment was entered, and Thomas' claims-civil conspiracy, fraudulent conveyance, and "veil-piercing"-all involved new theories of liability not asserted in the ERISA suit."). Absent a proper pleading to invoke the Court's jurisdiction over the defendants and service of a summons directing them to appear and defend themselves, this Court has no jurisdiction to impose liability for the judgment awarded Sentry against ADS upon them.

Rule 69(a), which governs execution of federal court judgments, does not provide otherwise. The Rule simply incorporates the law of the state where the court is located for proceedings supplementary to and in aid of judgment or execution. Wisconsin law does not allow the execution of a money judgment against non-parties absent a new and separate proceeding. *See* Wis. Stats. Chs. 815 and 816.

2

*R.B. General Trucking, Inc. v. Auto Parts & Service, Inc.*, 87 N.W.2d 863 (Wis. 1958), the one Wisconsin case cited by Sentry in the initial brief supporting its motion, is not to the contrary. In that case, R.B. General Trucking brought an action against Auto Parts & Service seeking to enjoin Auto Parts from collecting a judgment it had obtained against an individual named Roman Barutha from assets owned by R.B. General Trucking, a corporation of which Barutha's wife served as president. The judgment against Barutha had been amended to include R.B. Trucking, Inc., based on the court's finding that R.B. Trucking, Inc., had submitted to the jurisdiction of the court and upon a showing that in a previous action another court had found that "R. B. General Trucking, Inc. was created for a fraudulent purpose and should be considered the same as the individual, further that Roman Barutha and R. B. General Trucking, Inc. should in any event be treated as joint obligors," *Id.* at 94. Rather than appeal the judgment adding it as a defendant, R.B. Trucking, Inc., filed a separate action in which it sought to enjoin the execution of the judgment. Despite its concerns over the manner in which R.B. Trucking had been added to the judgment, the Wisconsin Supreme Court affirmed the circuit court's order dismissing R.B. Trucking's action. The case hardly stands as a blueprint for the proper way to enforce a judgment against a non-party, however. The Court emphasized that there may well have been error in the circuit court's action amending the original judgment:

> No summons was served on the corporation unless service on Roman Barutha be considered such. The complaint did not allege a cause of action against it and no amendment of the complaint appears to have been allowed or made. The testimony supporting the court's view that the corporation was a fraudulent artifice may have been imported from an action to which the corporation was never a party. There were no findings of fact supporting the amendment of the judgment, although findings which would have supported it were filed at about the same time in another action. Assuming the worst, however, an appeal was an adequate remedy and as heretofore stated there was no occasion to resort to an action in equity to restrain

3

enforcement. All essential facts were before the circuit court without dispute and summary judgment was properly granted.

*Id.* at 99.

The procedural posture of this case, of course, is significantly different than that of *R.B. Trucking, Inc*. This isn't a new action in which the alter ego defendants seek to enjoin a judgment entered against them in a separate action and from which they never bothered to appeal. This is the original action in which the alter ego defendants have directly challenged the ability of the Sentry to obtain a judgment against them personally through the simple expedient of filing a motion in a closed case without even serving them with a summons and complaint. There is no basis upon which the alter ego defendants can be considered to have waived their jurisdictional defenses here. *R.B. Trucking* is therefore of no help to Sentry.

The same is true of *Flip Side Productions, Inc. v. Jam Productions*, LTD, 1990 WL 186777 *2 (N.D. Ill. Nov. 8, 1990) (unpublished opinion), in which the Court held that "[a] supplementary proceeding is a proper means for a judgment creditor . . . to attempt to collect a judgment from suspected alter egos of the judgment debtor." The *Flip Side* Court was applying Illinois' law, not Wisconsin's. The Illinois courts had construed that state's law to permit enforcement of judgments against non-parties in supplementary proceedings. *See Federal Ins. Co. v. Maritime Shipping Agencies, Inc.*, 64 Ill. App.3d 19, 380 N.E.2d 873 (1st Dist.1978). The same cannot be said of Wisconsin courts. The Court thus lacks jurisdiction over the alter ego defendants and for this reason Sentry's motion must be denied.

But even if Sentry's claim were properly before the Court, it would still fail because it is precluded by the just completed California proceedings involving the same parties. Under

4

principles of issue and claim preclusion, a litigant is barred from re-litigating issues or claims that have previously been decided against him in another court. Under the principle of claim preclusion, which is embodied in the doctrine of res judicata, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Allen v. McCurry*, 449 U.S. 90, 94 (1980). In order for the doctrine to apply, there must exist "(1) an identity of the parties or their privies; (2) an identity of the causes of action; and (3) a final judgment on the merits." *Highway J Citizens Group v. United States Dept. of Transp.*, 456 F.3d 734, 741 (7th Cir.2006). Under issue preclusion, "once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *Allen,* 449 U.S. at 94. For issue preclusion to apply, four elements must be met: "(1) the issue sought to be precluded must be the same as that involved in the prior litigation, (2) the issue must have been actually litigated, (3) the determination of the issue must have been essential to the final judgment, and (4) the party against whom estoppel is invoked must be fully represented in the prior action." *La Preferida, Inc. v. Cerveceria Modelo, S.A. de C.V.*, 914 F.2d 900, 906 (7th Cir.1990). The purpose of each doctrine is to "relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." *Allen,* 449 U.S. at 94. Here, it is clear that Sentry's claims against the alter ego defendants are barred under either or both of the foregoing doctrines.

The record reflects that Sentry has been litigating essentially the same issue it seeks to raise in its motion to amend the judgment against ADS for the past several years in the Superior Court for Orange County, California. *See* Affidavit of Travis J. Burch, Ex. 1 (Doc. 153), and Declaration

5

of Marcus G. Larson (Doc. 169). The California action grew out of an Assignment for the Benefit of Creditors that ADS filed shortly after judgment in favor of Sentry was entered in this case. At Sentry's urging, the assignee, Development Specialists, Inc. (DSI), brought an action against the alter ego defendants and various other entities they controlled seeking to recover improper distributions and fraudulent transfers from ADS, and obtain an accounting. When DSI could not afford to continue the action, Sentry intervened and essentially took it over, even filing a new complaint that included a claim entitled "alter ego." (Larson Decl. ¶ 3, Ex. 1.) Although Sentry later filed an amended complaint which omitted the "alter ego" claim as a separate and independent cause of action, it continued its assertion that the funds and assets of ADS had been commingled with the assets and funds of the alter ego defendants and their various "Shell Corporations." (Larson Decl., Ex. 3 ¶ 15.) More specifically, Sentry alleged in its amended complaint that "at all times relevant, there existed such a unity of interest and ownership among the [alter ego defendants], on the one hand, and ADS, the Shell Corporations, and White Teeth, on the other, that the separate personalities of the [alter ego defendants] and the other defendants no longer exists and if the acts of ADS, the Shell Corporations, and White Teeth are treated as those of the defendant corporations alone, then an inequitable result will follow." (*Id.* ¶ 19.)

Following a trial that lasted from January 22 until February 28, 2008, the California court issued a written decision and judgment in which it rejected each of Sentry's claims. (Supp. Submission, Ex. 1 and 2 (Doc. 176).) The trial court's findings as to Sentry's Alter Ego Claims reads as follows:

> Sentry's first complaint in this action contained a purported cause of action for "alter ego." This was eventually disposed of via motion practice. In or about April of 2007, Sentry amended its complaint and completely restated (and expanded) its alter ego allegations which, in essence, allege all of the individual defendants are the alter egos of all of the entity defendants *as well as* ADS. In pretrial motions, the issue

> was distilled to Sentry's allegation that each defendant is the alter ego of ADS. Sentry also contended at trial that each individual defendant was the alter ego of the respective S-Corp defendant in which they held interest. The evidence supports none of these claims. It shows the S-corps were duly filed, properly maintained, had their own separate and distinct bank accounts, filed their own tax returns and maintained minutes of meetings, among other indicators. Indeed, Sentry declined to present oral argument at the close of evidence to support its alter ego allegations. The same is true as to ADS. As found above, ADS was a duly capitalized business with no genuine indicators of and alter ego relationship with its members. As with the Section 3439 claims [for fraudulent transfer], the alter ego allegations by Sentry simply are not supported by the evidence.

*Id.*, Ex. 2 at 15-16.)

As if its findings that Sentry failed to establish any of its claims against the defendant was not enough, the California trial court went even further and found that Sentry was barred from recovery in any event under the doctrine of unclean hands. The court found that after its fallout with ADS, Sentry through its agents had made false allegations concerning ADS' teeth whitening product to Good Housekeeping Magazine, which had issued a favorable ranking of ADS's product that had featured prominently in ADS' advertising. Sentry had alleged that the formula for the product had changed and now included Carcinogens. As a result, Good Housekeeping withdrew its authorization for ADS to use its name in advertising its product, which the court found "served the death knell for ADS and the White Brilliance product." (*Id.* at 18) Based upon this finding, the California court concluded that "Sentry essentially terminated its right to collect on its lawfully obtained judgment when it commenced its course of conduct to destroy ADS through its false representations." (*Id.* at 19.)

These findings and the judgment entered in the California action preclude Sentry's effort to impose personal liability on the alter ego defendants for the judgment entered against ADS. Sentry had a full and fair opportunity to litigate the issue of whether there were grounds to impute liability

7

for the judgment entered against ADS on the alter ego defendants.  The California trial court found that no such grounds existed and that, in any event, Sentry was barred from enforcing its judgment as a result of its own misconduct.  If Sentry disagrees with the California court's findings, its remedy is to appeal.  It may not ignore that court's rulings and start a new action in another state.  It therefore follows that even if Sentry had properly commenced an action against the alter ego defendants in this Court, the result would be the same.  This is true even if, as Sentry argues, California courts do not regard a trial court's decision as final until it is affirmed on appeal or the time to appeal has expired.  Federal law, not California's, governs the application of principles of claim and issue preclusion in federal courts.

Accordingly, Sentry's motion to amend judgment to add non-party alter egos and judgment debtors (Doc. 143) is denied, the defendants' motion to strike, dismiss or stay (Doc. 151) is denied as moot, and Sentry's motion to file a surreply (Doc. 171) is granted.

**SO ORDERED** this ___3rd___ day of July, 2008.

           s/ William C. Griesbach
           William C. Griesbach
           United States District Judge